UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ALEJANDRO TORRIS GARDNER,

                    Petitioner,

v.                                    Case No. 09-10335
                                    HONORABLE AVERN COHN

KENNETH McKEE,

                    Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY**

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Alejandro Torris Gardner ("Petitioner"), a state prisoner, challenges his jury convictions for first-degree murder, possession of a firearm during the commission of a felony (felony firearm), and felon in possession of a firearm. Petitioner claims that he was deprived of a fair trial by his trial counsel's omissions, the prosecutor's conduct and comments, a statement by the trial court regarding reasonable doubt, and the cumulative effect of trial errors. Respondent, through the Michigan Attorney General's Office, filed a response contending that the claims either lack merit or are procedurally defaulted. For the reasons that follow, the petition will be denied for lack of merit.

## II.  Background

Petitioner was charged in Wayne County, Michigan with first-degree murder, felony firearm, and felon in possession of a firearm.  The charges arose from the fatal shooting of Delvin Bundles in Detroit on March 29, 2002.  The evidence at trial established that Delvin, his brother, and some male friends went to a tavern known as Emonte's Lounge about 11:00 p.m. on March 28, 2002.  Three of their female friends also were there.  The group drank and danced.  Ter'ri Sellers testified that Petitioner tried talking to her, but that she was not interested in him.  Daryl Scott saw Petitioner arguing with Delvin Bundles at the exit and outside Emonte's Lounge.  Once outside, Delvin danced in the street and on top of his car.  Several gunshots subsequently were fired from across the street.  Delvin was shot and died from a single gunshot wound to his throat.

Darryl Scott identified Petitioner at trial as the shooter.  Ter'ri Sellers testified that, although she did not see the actual shooting and never saw a gun, she believed that Petitioner was the shooter because she saw him standing between the houses from which the gunfire came.

Petitioner testified that he was inside Emonte's Lounge talking to friends when the shooting occurred.  He denied having a gun or shooting Delvin Bundles, and he maintained that he did not know how the killing happened.

On September 23, 2002, a Wayne County Circuit Court jury found Petitioner guilty, as charged, of first-degree (premeditated) murder, Mich. Comp. Laws § 750.316(1)(a), felony firearm, Mich. Comp. Laws § 750.227b, and felon in possession of a firearm, Mich. Comp. Laws § 750.224f.  The trial court sentenced Petitioner to two

2

years in prison for the felony firearm conviction, followed by concurrent terms of life

imprisonment for the murder and two to five years for the felon-in-possession

conviction.

In an appeal of right, Petitioner argued that (1) trial counsel's failure to pursue his

motion to have the jury view the crime scene deprived him of his right to present

evidence and his right to effective assistance of counsel and (2) the prosecutor's closing

arguments deprived him of a fair trial.  The Michigan Court of Appeals found no merit in

these claims  and affirmed Petitioner's convictions in a per curiam opinion.  See People

v. Gardner, No. 246707 (Mich. Ct. App. July 15, 2004) (unpublished).  Petitioner raised

the same issues and a few new claims in an appeal to the Michigan Supreme Court.

The state supreme court denied leave to appeal because it was not persuaded to

review the issues.  See People v. Gardner, 693 N.W.2d 818 (Mich. 2005).

On or about June 21, 2006, Petitioner filed a motion for relief from judgment in

the trial court.  He raised claims pertaining to his trial attorney, the prosecutor, the trial

court's comment on reasonable doubt, and the cumulative effect of errors.  The trial

court's successor denied Petitioner's motion, and the Michigan Court of Appeals denied

leave to appeal for failure to establish entitlement to relief under Michigan Court Rule

6.508(D).  See People v. Gardner, No. 283147 (Mich. Ct. App. Mar. 24, 2008)

(unpublished).  The Michigan Supreme Court denied leave to appeal for the same

reason.  See People v. Gardner, 769 N.W.2d 193 (Mich. 2008).  Reconsideration was

denied on January 27, 2009.  People v. Gardner, 759 N.W.2d 374 (Mich. 2009).

Petitioner filed his habeas corpus petition through counsel on January 29, 2009.

He claims that (1) his trial counsel was ineffective, (2) the prosecutor failed to timely

disclose evidence and made an improper closing argument, (3) the prosecutor called a rebuttal witness who was not listed as a witness, (4) the trial court made an erroneous and misleading comment about reasonable doubt, and (5) the cumulative effect of the trial errors deprived him of a fair trial.

Respondent argues in an answer to the petition that Petitioner's claims either lack merit or are procedurally defaulted because Petitioner failed to make a contemporaneous objection at trial or failed to raise all his claims on direct review. Petitioner maintains that his attorneys were "cause" for the procedural errors.

Procedural default is not a jurisdictional limitation, Pudelski v. Wilson, 576 F.3d 595, 606 (6th Cir. 2009), cert. denied, __ U.S. __, 130 S. Ct. 3274 (2010), and the Court has found it more efficient to address the merits of Petitioner's claims than to analyze whether they are procedurally defaulted.  Thus, the alleged procedural defaults are excused.

### III.  Standard of Review

A habeas petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

4

question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-06  (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct."  Goodwin v. Johnson, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and Landrum v. Mitchell 625 F.3d 905, 914 (6th Cir. 2010), petition for cert. filed, No. 10-9911 (U.S. Apr. 4, 2011)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, __ U.S. __, __, 131 S. Ct. 770, 786 (2011).  To obtain a writ of habeas corpus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

## IV.  Analysis

5

### A.  Trial Counsel

The first habeas claim alleges ineffective assistance of trial counsel.  Specifically, Petitioner alleges that his trial counsel should have (1) called a known alibi witness and an exculpatory witness, (2) objected to the trial court's comment on reasonable doubt, (3) objected to the prosecutor's rebuttal witness, (4) moved to suppress the suggestive line-up identification, and (5) pursued a jury view of the crime scene.  The Michigan Court of Appeals adjudicated Petitioner's claim about trial counsel's failure to have the jury view the crime scene and concluded that counsel was not ineffective.  Petitioner did not raise the other allegations of ineffective assistance on direct appeal.  However, the trial court reviewed the other ineffective-assistance-of-counsel claims when ruling on Petitioner's motion for relief from judgment, denying them on the merits.

Ineffective-assistance-of-counsel claims are held to the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  First, Petitioner must show that his attorney's performance was deficient.  Id. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment [to the United States Constitution]."  Id. Petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy.  Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Second, Petitioner must establish that counsel's deficient performance prejudiced his defense.  Id. at 687.  Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "This does not require a showing that counsel's

6

actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 131 S. Ct. at 792 (citing Strickland, 466 U.S. at 693).  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. at 788 (internal and end citations omitted).

### 1.  Alibi Witness

Petitioner says that trial counsel should have produced Juwon Looney as an alibi witness and Kalifa Brown as an exculpatory witness.  On the first day of trial, trial consel stated that he had been having problems finding Kalifa Brown, but that he had located him, interviewed him, and thought he would be helpful.  (Tr. Sept. 3, 2002, at 4.)  There is no explanation in the record as to why defense counsel did not call Brown as a defense witness.  Petitioner, however, has not alleged what Brown would have said if he had testified.  As such, Petitioner therefore has failed to show that trial counsel was ineffective for failing to call Brown as a defense witness.

Juwon Looney was listed as a defense witness, and Petitioner testified on cross-examination by the prosecutor that Juwon was a co-worker who had been inside Emonte's Lounge with him during the shooting.  (Tr. Sept. 17, 2002, at 111-15.)[1]  "A number of courts have found ineffective assistance of counsel in violation of the Sixth Amendment where . . . a defendant's trial counsel . . . fails adequately to investigate potential alibi witnesses."  Clinkscale v. Carter,  375 F.3d 430, 443 (6th Cir. 2004).  And the testimony of a second person to corroborate a defendant's version of the events is

---

[1]The shooting occurred outside.

7

not considered cumulative; rather, it adds to the strength of the defendant's case.
English v. Romanowski, 602 F.3d 714, 727 (6th Cir. 2010) (citing Bigelow v. Williams,
367 F.3d 562, 574-75 (6th Cir.2004), and Washington v. Smith, 219 F.3d 620, 634 (7th
Cir. 2000)).

The record here, however, indicates that trial counsel intended to call Juwon
Looney and that Looney either did not show up when he was supposed to be in court or
he appeared and left the courthouse without permission.  (Tr. Sept. 17, 2002, at 131-
33.)  Trial counsel was not ineffective for failing to call an unavailable or uncooperative
witness.  See Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1998).

### 2.  The Comment on Reasonable Doubt

Petitioner contends that trial counsel should have objected to the trial court's
comment that proof beyond a reasonable doubt cannot be quantified and that, "We
don't know exactly how much [reasonable doubt] is."  As discussed below, see Part IV.,
C., infra, the remark occurred during voir dire, and the jury instructions properly
explained the prosecution's burden of proof and the concept of reasonable doubt.
Therefore, trial counsel was not ineffective for failing to object to the trial court's passing
remark about not being able to quantify reasonable doubt.

### 3.  The Rebuttal Witness

Petitioner alleges that trial counsel should have objected to the prosecutor's use
of Lorenzo Gladney as a rebuttal witness.  Petitioner relies on Mich. Comp. Laws §
768.21(2), which states that the trial court shall exclude evidence offered by the
prosecuting attorney for the purpose of rebutting an alibi defense if the prosecuting
attorney fails to file and serve a notice of rebuttal on the defendant.

8

Even if the prosecutor violated Mich. Comp. Laws § 768.21(2) and trial counsel's failure to object amounted to deficient performance, there is not a reasonable probability that the jury would have acquitted Petitioner but for Gladney's testimony.  Gladney testified that Petitioner was not inside Emonte's Lounge when the shooting occurred. This testimony was consistent with the testimony of other prosecution witnesses.  Thus, trial counsel's failure to object did not prejudice the defense.

### 4. The Line-Up

Petitioner alleges that trial counsel should have moved to suppress testimony that Daryl Scott identified him in a pretrial line-up.  Petitioner points out that the attorney who viewed the line-up for fairness objected to the line-up.  The line-up attorney stated that one man in the line-up was too tall, another man was too dark-complected, a third man was too old, and the fourth man's hair was too long.  See Pet. for Writ of Habeas Corpus, Ex. C.

Even assuming that the line-up was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," Neil v. Biggers, 409 U.S. 188, 197 (1972) (quoting Simmons v. United States , 390 U.S. 377, 384 (1968)), the question is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive."  Id. at 199.  "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  Id. at199-200.  "If an identification is

9

reliable, it will be admissible even if the confrontation was suggestive." Howard v.
Bouchard, 405 F.3d 459, 469 (6th Cir. 2005) (citing Manson v. Braithwaite, 432 U.S. 98,
114 (1977), and Carter v. Bell, 218 F.3d 581, 605 (6th Cir. 2000)).

Daryl Scott, who identified Petitioner at a pretrial line-up, testified at trial that he
saw Petitioner arguing with the victim inside and outside Emonte's Lounge before the
shooting.  Scott subsequently saw Petitioner flash a gun at the victim.  Later, he heard
gunshots and ducked.  When he straightened up, he saw Petitioner pointing a gun in his
and Delvin Bundles' direction from across the street.  He heard three or four more
gunshots, one of which hit Delvin.  (Tr.  Sept. 12, 2002, at 105-30.)  On cross-
examination, Scott testified that he actually saw Petitioner fire the gun.  (Tr. Sept. 16,
2002, at 130-31.)

Scott's degree of attention apparently was good, because he claimed that he
could see the pockmarks on Petitioner's face.  (Id. at 144.)  His description of Petitioner
was accurate as well.  He informed the police that Petitioner was 5'7" to 5'9" tall and
about 175 pounds with something like needle points in his skin and that Petitioner's age
was late twenties to early thirties.  (Tr. Sept. 12, 2002, at 135.)[2]  The line-up sheet
describes Petitioner as 5'7" tall, 175 pounds, and thirty years old with bumpy, scarred
skin, short hair, and a medium-dark complection.  See Pet. for Writ of Habeas Corpus,
Ex. C.

Scott was certain of his identification of Petitioner at the confrontation.  He

---

[2]On cross-examination, Scott admitted to telling the police that the shooter was
5'10" to 5'11", but his description of the shooter's weight, age, and pock-marked face
remained the same.  (Tr. Sept. 16, 2002, at 118-19.)

informed the police investigator that he saw Petitioner shoot the victim and that he would not forget his face because he saw him in the bar every Thursday.  (Tr. Sept. 12, 2002, at 142.)

The crime occurred on March 29, 2002, and the line-up was held on April 7, 2002.  (Id. at 138.)  Thus, the length of time between the crime and the confrontation was not long.

Based on the above, there was an independent basis for Scott's identification of Petitioner at trial and that a motion to suppress the pretrial identification would have lacked merit.  Trial counsel was therefore not ineffective for failing to file a motion to suppress.

### 5. Jury View of the Scene

Petitioner claims that trial counsel should have pursued his motion to have the jury view the crime scene.  According to Petitioner, a view of the scene would have assisted the jury in fully evaluating and understanding the evidence, and trial counsel's failure to pursue this matter deprived him of his right to present evidence supporting his defense.  The Michigan Court of Appeals adjudicated this claim on the merits and concluded that trial counsel was not ineffective for failing to pursue the matter.  This Court agrees.

Trial counsel stated at trial that he had gone back to the crime scene and concluded that a prosecution witness had not been entirely candid in her testimony about the lighting conditions on the night of the crime.  Trial counsel moved for permission to have the jury view the crime scene at night or to have someone videotape the scene.  The trial court responded by asking trial counsel to submit some legal

authority in support of his request.  Trial counsel agreed to research the issue, but failed to raise the matter again.  (Tr. Sept. 11, 2002, at 3-9.)

State court judges in Michigan have discretionary authority to permit juries to view crime scenes.  Mich. Comp. Laws § 768.28; Mich. Ct. R. 6.141(F); People v. Pizzino, 20 N.W.2d 824, 828 (Mich. 1945).  Trial counsel, however, could have concluded that insisting on a viewing of the crime scene would have been fruitless, given the difficulty in duplicating the lighting conditions on the night of the crime.  The amount of light available from the moon, street lights, and car headlights would have been difficult to replicate, and witnesses gave conflicting testimony as to whether certain nearby porch lights were in use at the time of the crime.  Trial counsel was not ineffective for failing to pursue a futile claim.  See Harris v. United States, 204 F.3d 681, 683 (6th Cir. 2000) (citing Strickland, 466 U.S. at 687-96).

Furthermore, as the Michigan Court of Appeals recognized, a view of the crime scene could have been detrimental to the defense.  The jurors might have been persuaded from a view of the crime scene that the eyewitnesses were, in fact, able to view the shooter.  Overall, trial counsel was not ineffective for failing to pursue his request to have the jury visit the crime scene.

## B.  The Prosecutor

The second and third habeas claims allege prosecutorial misconduct.  Petitioner contends that the prosecutor failed to timely disclose evidence, made an improper closing argument, and called a rebuttal witness who was not listed as a witness.

12

### 1.  Failure to Disclose Evidence

Petitioner alleges first that the prosecutor violated the trial court's discovery order and either withheld evidence from him or delayed disclosing evidence to him and his attorney.  Petitioner contends that the existence of critical prosecution witnesses (Ter'ri Sellers and her friends) was not disclosed to trial counsel until a few weeks before trial and that physical evidence and test results on seized evidence were withheld from counsel.  Petitioner claims that the failure to disclose evidence in a timely fashion deprived him of due process, a fair trial, and a meaningful opportunity to defend himself.

Petitioner's claim is based on Brady v. Maryland, 373 U.S. 83, 87 (1963), in which the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  "There are three components of a true Brady violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

The evidence at issue here are a fence railing, fingerprint testing, a footprint impression, the evidence technicians' reports, photographs, and the existence of prosecution witnesses Ter'ri Sellers and her friends.  All of the physical evidence appears to have been made available to trial counsel before or during trial, and none of the evidence was exculpatory.

13

Petitioner's claim "fails to the extent that he suggests that the violation of the discovery order itself supports his <u>Brady</u> claim." <u>Warlick v. Romanowski</u>, 367 F. App'x 634, 639 (6th Cir. 2010) (citing <u>Colston v. Burke</u>, 37 F. App'x 122, 125 (6th Cir. 2002)). And his complaint that the prosecutor was tardy in disclosing information does not warrant reversal, because

> "<u>Brady</u> generally does not apply to delayed disclosure of exculpatory information, but only to complete failure to disclose." [<u>United States v. Bencs</u>, 28 F.3d 555, 560 (6th Cir. 1994)]. "Delay . . . violates <u>Brady</u> [only] when the delay itself causes prejudice." <u>United States v. Patrick</u>, 965 F.2d 1390, 1400 (6th Cir. 1992).

<u>O'Hara v. Brigano</u>, 499 F.3d 492, 502 (6th Cir. 2007).

Petitioner has not alleged any specific prejudice as a result of the tardy disclosure of evidence. Furthermore, the jury was informed that no fingerprints were found on the fence railing and that the police were unable to identify the type of shoe that made the footprint impression found at the crime scene. The evidence technicians testified at trial, and photographs were admitted in evidence. In addition, trial counsel was able to adequately cross-examine Ter'ri Sellers and her friends.

Petitioner has not shown that he was deprived of favorable evidence and that prejudice ensued. The trial court's similar conclusion was reasonable. Overall, Petitioner is not entitled to relief on a claim of prosecutorial misconduct based on an alleged <u>Brady</u> violation.

### 2. Closing Arguments

Petitioner alleges that the prosecutor made an improper civic duty argument at the conclusion of his trial. A prosecutor may not make closing remarks that are wholly irrelevant to any facts or issues in the case in order to arouse the jury's passions or

14

prejudice, <u>Viereck v. United States</u>, 318 U.S. 236, 247-48 (1943), but "[c]laims of

prosecutorial misconduct are reviewed deferentially on habeas review." <u>Millender v.</u>

<u>Adams</u>, 376 F.3d 520, 528 (6th Cir. 2004) (citing <u>Bowling v. Parker</u>, 344 F.3d 487, 512

(6th Cir. 2003)).  To prevail on his claim, Petitioner must demonstrate that the

prosecutor's remarks infected the trial with such unfairness "as to make the resulting

conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643

(1974).

Courts in this circuit employ a two-prong test for determining whether

prosecutorial misconduct rendered a trial fundamentally unfair.  <u>Slagle v. Bagley</u>, 457

F.3d 501, 515 (6th Cir. 2006) (citing <u>United States v. Carter</u>, 236 F.3d 777, 783 (6th Cir.

2001)).  First, a court asks whether the prosecutor's conduct or remarks were improper.

<u>Id</u>. at 516.  Second, if the conduct or remarks were improper, a reviewing court must

consider whether the improper acts were so flagrant as to warrant reversal.  <u>Id</u>.

> [T]he court considers four factors to decide whether the improper acts
> were sufficiently flagrant to warrant reversal: (1) whether the evidence
> against the defendant was strong, (2) whether the conduct of the
> prosecution tended to mislead the jury or prejudice the defendant; (3)
> whether the conduct or remarks were isolated or extensive; and (4)
> whether the remarks were made deliberately or accidentally.

<u>Id</u>.

> Here, the prosecutor made the following remarks during closing arguments:

>> When you're determining and thinking about the evidence in this
>> case, you have to judge all of what the witnesses said.  But there's a
>> quote I often think of when I'm closing, at least in my initial closing
>> remarks, during my closing argument.  And ladies and gentlemen, this
>> directly has to do with the evidence presented in this case.

>> Albert Einstein once said, the world is a dangerous place, but not
>> because of those in it who do evil.  But because of those that stand by and

15

let it happen.

Now that this case has been proven to you beyond a reasonable
doubt, don't you be the jurors that stand by and let it happen.  Thank you.

(Tr. Sept. 18, 2002, at 54-55.)

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error"

because defense counsel did not object to the comments during trial.  The court of

appeals concluded that the prosecutor's comments, if error, were not "plain," "clear," or

"obvious" error and that Petitioner was not prejudiced by the remark.

The Michigan Court of Appeals decision was objectively reasonable.  Although

the disputed remarks insinuated that Petitioner had done something evil and that the

jurors had an obligation to convict him, the prosecutor also stated that the jury should

convict Petitioner because she proved the elements of the crimes beyond a reasonable

doubt.  It is not improper to urge jurors to fulfill their societal duty, Byrd v. Collins, 209

F.3d 486, 538-39 (6th Cir. 2000), or "to remind the jury that there is a general

'community or societal need to convict guilty people.'"  Reed v. United States, 133 F.

App'x 204, 209 (6th Cir. 2005) (citing United States v. Solivan, 937 F.2d 1146, 1155 (6th

Cir. 1991)).

Furthermore, the trial court charged the jurors not to let sympathy or prejudice

influence their verdict and to decide the case only on the basis of properly admitted

evidence.  The trial court also explained that the attorneys' arguments were not

evidence, but were meant to help the jury understand the evidence and the parties'

legal theories.  (Tr. Sept. 18, 2002, at 89, 91-93.)

In sum, even if the prosecutor's remarks were improper, they were not "so

16

egregious as to render the trial fundamentally unfair," Angel v. Overberg, 682 F.2d 605, 608 (6th Cir. 1982), given the strength of the evidence against Petitioner, the trial court's jury instructions, and the "stringent standards applicable on habeas review." Byrd v. Collins, 209 F.3d at 539. Petitioner therefore is not entitled to relief on the basis of the prosecutor's alleged "civic duty" argument.

### 3. The Rebuttal Witness

Petitioner challenges the prosecutor's decision to call Lorenzo Gladney as a rebuttal witness. Gladney was the doorman at Emonte's Lounge on the night of the murder. He testified that Petitioner was not inside Emonte's Lounge at the time of the shooting. (Tr. Sept. 18, 2002, at 5-11.) Petitioner maintains that the prosecutor's failure to call Gladney during her case in chief and her failure to name Gladney as a rebuttal witness when specifically asked whom she intended to call as a rebuttal witness deprived him of due process and a fair trial.

The trial court on collateral review was the only state court to review Petitioner's claim on the merits. The trial court concluded that there was not an abuse of discretion in allowing the prosecution to call a previously undisclosed rebuttal witness. The trial court noted the evidence of Petitioner's guilt was overwhelming and that Gladney's testimony merely supported the testimony of prior witnesses.

Although Petitioner styles his claim as a due process violation, the essence of his claim is that the prosecutor violated her statutory duty to list all the witnesses that she intended to call at trial. "Issues of state law cannot form the basis for habeas relief." Landrum v. Mitchell, 625 F.3d at 913 (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990), and Estelle v. McGuire, 502 U.S. 62, 67 (1991)). "In conducting habeas review, a

17

federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam)).

"[A]ll the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial." Lorraine v. Coyle, 291 F.3d 416, 441 (6th Cir. 2002). The Constitution does not require "pre-trial disclosure of any impeachment evidence related to the defendant's case." Id. (citing United States v. Presser, 844 F.2d 1275, 1284 (6th Cir. 1988)). The decision to call Gladney was not fundamentally unfair because, as the trial court recognized, Gladney's testimony "merely supported the testimony of prior witnesses, whose testimony placed the defendant outside the club at the time of the shooting." Opinion at 7 (3d Judicial Cir. Ct. Jan. 31, 2007). In short, there is no constitutional violation cognizable on habeas corpus review. Lorraine v. Coyle, 291 F.3d at 441. Thus, Petitioner is not entitled to relief on his claim that the prosecutor improperly produced Gladney as a rebuttal witness.

### C.  The Comment on Reasonable Doubt

Petitioner alleges next that the trial court made an erroneous and misleading comment about what constitutes reasonable doubt during voir dire. The comment was: "We don't know exactly how much [beyond a reasonable doubt] is. We can't exactly quantify that, but we know it is substantially more than fifty-one percent." (Tr. Sept. 4, 2002, at 41.). Immediately after the comment, the trial court said the following:

> Reasonable doubt. I am now going to read you the definition of reasonable doubt.
> A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense.

18

> A reasonable doubt is just that, a doubt that is reasonable after a careful and considered examination of the facts and circumstances of this case.

(Id. at 41-42.)  The trial court then repeated the same definition of reasonable doubt (id. at 42) and continued voir dire.  Finally, during final jury instructions prior to deliberations, the trial court read the same definition of reasonable doubt.  (Tr. Sept. 18, 2002, at 91.)

Petitioner contends that the first comment diluted the reasonable doubt standard and relieved the prosecutor of the burden of proving guilt beyond a reasonable doubt. The trial court found no merit in this claim given what the trial court said following the comment and during final jury instructions.

The question on habeas corpus review of jury instructions is whether the instructions violated some right guaranteed to the defendant by the Fourteenth Amendment or infected the entire trial to such an extent that the resulting conviction violates due process.  Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).  A jury instruction

> "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  Cupp v. Naughten, supra, 414 U.S., at 147, 94 S. Ct., at 400-01.  In addition, in reviewing an ambiguous instruction . . . , [courts] inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  Boyde v. California, 494 U.S. 370, 380, 110 S. Ct. 1190, 1198, 108 L. Ed.2d 316 (1990).

Estelle v. McGuire, 502 U.S. at 72.

In Victor v. Nebraska, 511 U.S. 1 (1994), the Supreme Court stated that prosecutors "must prove beyond a reasonable doubt every element of a charged offense."  Id. at 5 (citing In re Winship, 397 U.S. 358 (1970)).  The Supreme Court went on to say that the Constitution does not require any particular words in advising a jury of

19

the prosecutor's burden of proof, provided that "the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt." Id. The instructions, "taken as a whole, [must] correctly conve[y] the concept of reasonable doubt to the jury." Id. (quoting Holland v. United States, 348 U.S. 121, 140 (1954)) (alterations in original).

Petitioner does not question the constitutionality of the trial court's definition of reasonable doubt. He claims instead that, under state law, when there is one correct jury instruction and one incorrect instruction, the jury is presumed to follow the incorrect instruction.

Even assuming the initial comment was an instruction, the trial court no less than three times gave a proper reasonable doubt instruction. The brief comment about reasonable doubt during voir dire in no way impacted the case. The comment, in context, was precatory to the trial court's reading of the definition of reasonable doubt, particularly as to the instructions on reasonable doubt at the close of the proofs. The jury instructions as a whole properly explained the prosecution's burden of proof, and there is no reasonable likelihood that the jury applied the trial court's brief remark in a way that violates the Constitution. The trial court was correct in concluding the same. Therefore, Petitioner is not entitled to habeas relief on this ground.

### D.  The Cumulative Effect of Errors

Petitioner's fifth and final claim alleges that the cumulative effect of the trial errors deprived him of a fair trial. Petitioner claims that, even if any given issue, standing alone, does not constitute a constitutional error, the cumulative effect of several errors can constitute sufficient prejudice to warrant reversal. The trial court denied the claim

on the grounds could be no cumulative harm to Petitioner's due process rights where there was no merit in any of Petitioner's arguments.

This Court agrees.  Furthermore, "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."  Lorraine v. Coyle, 291 F.3d at 447.  Constitutional errors that would not individually support habeas relief simply cannot be cumulated to support habeas relief.  Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005) (citing Scott v. Elo, 302 F.3d 598, 607 (6th Cir. 2002), and Lorraine v. Coyle, 291 F.3d at 447).  As such, Petitioner is not entitled to habeas relief based on a cumulative error claim.

## V.  Conclusion

For the reasons stated above, the state courts' adjudications of Petitioner's claims were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts.  The state court decisions were not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 131 S. Ct. at 786-87.  Accordingly, the petition for writ of habeas corpus is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore DECLINES to grant a certificate of appealability under 28

21

U.S.C. § 2253(c)(2).[3] <u>See Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

      SO ORDERED.

            <u>S/Avern Cohn                   </u>
            AVERN COHN
            UNITED STATES DISTRICT JUDGE

Dated:  June 1, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 1, 2011, by electronic and/or ordinary mail.

            <u>S/Julie Owens           </u>
            Case Manager, (313) 234-5160

---

[3]"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.